**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
|     INSTRUMENTATION AND CONTROLS, INC., | : | Chapter 11 |
| | : | |
|     Debtor. | : | Bky. No. 13-17059 ELF |
| | : | |
| INSTRUMENTATION AND CONTROLS, INC., | : | |
| ICI GREEN, L.L.C., | : | |
| | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTHEAST UNION, INC., | : | Adv. No. 13-0563 |
| | : | |
|     Defendant. | : | |

# M E M O R A N D U M

**I.**

In this adversary proceeding, the Plaintiffs Instrumentation and Controls, Inc. and ICI Green, LLC ("the Plaintiffs") seek to recover pre-petition payments totaling $31,950.00 as preferences pursuant to 11 U.S.C. §§547, 550.[1] Defendant Northeast Union, Inc. ("the Defendant") asserts the defense that the Plaintiffs' payments constituted a contemporaneous exchange for new value. See 11 U.S.C. §547(c)(1). The Defendant raises a species of this

---

[1] Instrumentation and Controls, Inc. is the debtor in Bky. No. 13-17059. ICI Green, LLC is the debtor in Bky. No. 13-17060. The cases are being jointly administered. The Complaint refers to the alleged preferential transfers as having been made by "the Debtors." (Complaint ¶ 22) (Adv. No. 13-0653, Doc. # 1).

defense commonly referred to as the "indirect transfer" theory.

Presently before the court is the Plaintiffs' Motion for Judgment on the Pleadings ("the Motion"). The Plaintiffs filed the Motion on January 8, 2014. The Defendant filed its response on February 25, 2014.

The Plaintiffs contend that the facts set forth in the Defendant's Answer to the Complaint do not state a defense under §547(c)(1) and, based on the admissions in the Answer, the Plaintiffs are entitled to judgment as a matter of law.[2] Respectfully, I disagree. Consequently, the Motion will be denied.

## II.

Section 547(c) of the Bankruptcy Code provides, in pertinent part:

> The trustee may not avoid under this section a transfer
>
> > (1) to the extent that such transfer was —
> >
> > > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> > >
> > > (B) in fact a substantially contemporaneous exchange.

---

[2] Fed. R. Civ. P. 12(c), incorporated by Fed. R. Bankr. P. 7012, provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Rule 12(c) permits a court to enter a dispositive order when the pleadings reveal that no material facts are in dispute and only questions of law remain. E.g., Sherzer v. Homestar Mortg. Services, 707 F.3d 255, 257 (3d Cir. 2013). In considering a motion for judgment on the pleadings, the court views the facts set out in the pleadings and the inferences therefrom in the light most favorable to the nonmoving party. E.g., Allstate Property and Cas. Ins. Co. v. Squires, 667 F.3d 388, 390 (3d Cir. 2012).

11 U.S.C. §547(c)(1).

The §547(c)(1) defense is rooted in one of the core purposes of bankruptcy preference law, which is to permit the trustee to recover certain transfers made shortly before the filing of the bankruptcy case in order to promote the orderly, equality of distribution among creditors. See 5 Collier on Bankruptcy ¶547.01 (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2013) ("Collier"); 4 Norton Bankr. L. & Prac. 3d §66:1 (West 2014).[3] Thus, if the bankruptcy estate was not depleted or diminished by a transfer because the estate received back new value equivalent to the value of the outgoing transfer, there is no detriment to the other creditors, no bankruptcy purpose is achieved by setting aside the transfer, and §547(c)(1) provides a defense to the preference claim. E.g., Collier ¶547.04.[1][c] (citing In re Fuel Oil Supply & Terminaling, Inc., 837 F.2d 224 (5th Cir. 1988)); In re Hatfield Electric Co., 91 B.R. 782, 784 (Bankr. N.D. Ohio 1988); see generally In re Polichuk, 2014 WL 766648, at *19 (Bankr. E.D. Pa. Feb. 27, 2014) (applying same reasoning to fraudulent transfer claims).

The "indirect transfer" defense theory is invoked when there is a nexus between the debtor's facially preferential payment to a creditor and the transfer of new value to the debtor by a third party. Reduced to its essence, a creditor-defendant raising this defense theory is asserting that when it received the payment from the debtor, it waived rights against or otherwise caused a third party to provide value to the debtor. If the value the debtor received from the third party equaled the payment the debtor made to the creditor, there was no loss to the estate and

---

[3] Another purpose of the defense is to encourage creditors "to continue to deal with troubled debtors without fear that they will have to disgorge payments received for value given." Collier ¶547.04[1], at 547-42.

§547(c)(1) provides a defense to the preference claim.  E.g., Collier ¶ 547.04[1][c]; see generally In re C.P.P. Export & Import, Inc., 132 B.R. 962, 965-66 (D. Kan. 1991) (§547(c)(1) provides a defense when "the debtor receives at least as much in new value as it transfers away").

Commonly, the "indirect transfer" defense theory is asserted when: (1) the debtor owes a debt to its creditor; (2) the creditor has recourse in some form against the third party if the debtor defaults; and (3) after the creditor could exercise its rights against the third party, as a result of which the third party may invoke indemnification rights against the debtor.  A significant variable in this three (3) party relationship, insofar as the §547(c)(1) defense is concerned, is whether the third party itself owes an obligation to the debtor giving rise to an ability to setoff its payment to the creditor against amounts that it may owe the debtor.  This is illustrated in the examples below:

> **Example 1 (preference payment results in indirect new value to debtor):**
> As a result of the debtor's facially preferential payment, the creditor waives or otherwise does not assert its lien rights against the third party.  The third party then does not invoke its setoff rights against the amounts it owes the debtor.  Consequently, it pays the debtor's invoice in an amount at least equal to the preferential payment to the creditor. That payment, in effect, "replaces" the payment the debtor made to the creditor and there is no net loss to the estate.  See, e.g., In re Gem Const. Corp. of Virginia, 262 B.R. 638, 646 (Bankr. E.D. Va. 2000).
>
> **Example 2 (preference payment does not result in indirect new value to debtor):**
> Same facts as Example 1, except that the third party does not owe any money to the debtor, making setoff impossible.  In this scenario, the third party is left with only a general unsecured claim against the debtor.  The end result is that the third party's claim against the estate replaces the creditor's claim against the estate while the bankruptcy estate has been diminished by the amount of the preferential payment.

As the Plaintiffs points out in their memorandum, there are reported decisions in which the "indirect transfer" theory has been rejected, e.g., In re Chase & Sanborn Corp., 904 F.2d 588, 596 (11th Cir. 1990), and some cases have suggested that there is a division of authority on the issue, e.g., In re Charwill Const., Inc., 391 B.R. 7, 12 (Bankr. D.N.H. 2007). However, after reviewing the case law, much of which was collected in In re J.A. Jones, Inc., 361 B.R. 94, 102-03 (Bankr. W.D.N.C. 2007), I agree with the Jones court's analysis:

> [T]he split in the case law on whether [the creditor's] release of inchoate lien rights against [a third party] constitutes ''new value'' is not as wide as it initially appears. A close reading of the cases reveals that the primary variant in these cases is whether, at the time of the preference payment, the [third party] still owed sufficient sums to the debtor on the project to permit a setoff . . . . If the [third party] still owes the debtor, then its indemnity claim can be setoff and is secured. In this context, most courts consider the ''indirect transfer'' to provide new value. If there is no debt to be setoff, however, then the owner's claim for indemnification is simply an unsecured debt and there is no ''new value.''

Id. at 103; accord Charwill Const., 391 B.R. at 12; see also In re Powers Lake Const. Co., Inc., 482 B.R. 803, 808 (Bankr. E.D. Wis. 2012) (rejecting subcontractor's defense because no payments were due from third party owner to debtor).

In evaluating a §547(c)(1) defense based on the "indirect benefit" theory, the touchstone is the ultimate impact on the bankruptcy estate. In this regard, the asserted benefit provided to the estate by the third party must enhance the estate "in real terms;" it must provide more than an "esoteric or intangible" benefit. In re Adelphia Automatic Sprinkler Co., 184 B.R. 224, 228 (E.D. Pa. 1995) (quoting In re Aero-Fastener, Inc., 177 B.R. 120, 138 (Bankr. D. Mass. 1994)); accord In re American Rehab. & Physical Therapy, Inc., 2006 WL 1997431, at *12 (Bankr. E.D. Pa. May 18, 2006). Further, the defendant invoking the defense "must prove the specific measure of the new value given to the debtor." In re Spada, 903 F.2d 917, 976 (3d Cir. 1990)

(quoting In re Jet Florida Systems, Inc., 861 F.2d 1555, 1558 (11th Cir. 1988)); accord American Rehab., 2006 WL 1997431, at *12.

With these principles in mind, I consider the defense raised in this adversary proceeding.

### III.

In this adversary proceeding, there is no dispute that the Debtors transferred $31,950.00 to the Defendant ("the Transfer") and that the Transfer is avoidable as a preference under 11 U.S.C. §547(b), unless the Defendant's §547(c)(1) defense is legally meritorious.[4] There also is no dispute that, in connection with the Transfer, the Defendant waived its right to file mechanics' liens against two (2) separate third parties.

The Defendant contends that its waiver of its unperfected mechanics' lien rights caused the third parties to provide the Debtor with contemporaneous new value. Specifically, the Defendant alleges:

> [T]he Plaintiff had been frozen out from contracts by either or both SBA 2012 TC Assets, LLC and or Nextel Communications of the Mid-Atlantic , Inc[.] as a result of the defendant serving Notices of Intention to File a Mechanics Lien. The Plaintiff's payment of the defendant's invoices was also to insure that the Defendant would waive any Mechanics Liens rights it would have concerning both the above third parties and insure that ongoing contracts with these third parties would continue so this transfer was also a contemporaneous exchange for new value under 11 U.S.C. Section 547 (c ) (1).

(Defendant's Answer to Complaint ¶25). In its response to the Motion, the Defendant claims that the value of the third-party contracts that were "unfrozen" as a result of the payment to the

---

[4] In its Answer to the Complaint, the Defendant raised six (6) other affirmative defenses; however, in its response to the Motion, the Defendant does not suggest, at this time, that any defense other than the §547(c)(1) defense precludes the entry of judgment on the pleadings.

Defendant were $88,016.00 and $658,565.40.  (Defendant's Answer to Motion ¶15).

At the pleading stage, the Defendant's allegations are sufficient to state a defense. Although the three-party relationship described by the Defendant differs from the prototypical debtor/subcontractor-creditor/property owner relationship in which the "indirect transfer" theory is frequently invoked, the Defendant's position finds support in prior decisions in this jurisdiction.

In In re Great Point Intermodal, LLC, 2004 WL 2988507 (E.D. Pa. Dec. 27, 2004), the debtor, which was in the trucking business, fell behind on payments to a creditor that provided it access to railyards where the debtor stored and exchanged the containers that it transported for its customers.  After the creditor locked the debtor out of the railyard, the debtor paid the overdue fees, which led the railyard owner to reopen the railyard to the debtor.  The district court affirmed the bankruptcy court's finding that the debtor's payment not only satisfied the antecedent debt, but also provided new value, reasoning that "in re-opening their yards, Appellants took a beneficial action that they were not legally required to take, and that the Payment thus provided new value to GPI as a matter of law." 2004 WL 2988507, at *2.  Similarly, in Adelphia Automatic Sprinkler, 184 B.R. at 227, the court held that a landlord provided debtor with new value by extending the term of the debtor's lease in exchange for payments that cured an existing lease payment delinquency.

As the court observed in Great Point Intermodal, the critical element is whether the defendant can show that it took (or in the three-party context, it caused a third party to take) action that it (or the third party) was not legally obligated to take, which produced a tangible benefit to the bankruptcy estate.  Just as the debtor's ability in Great Point Intermodal to access

the railyards so that it could continue to service its customers (thereby generating revenue and profit) constitutes new value,[5] the Debtors' ability to retain its contractual relationship with two (2) of its customers, as is alleged by the Defendant, also may constitute new value.

Thus, the Defendant can establish its §547(c)(1) defense under the "indirect transfer" theory if the Defendant can prove:

> (1) that SBA 2012 TC Assets, LLC and/or Nextel Communications of the Mid-Atlantic/Sprint, or their subcontractor, Alcatel-Lucent USA, Inc. ("the Third Parties") had no obligation to perform their contractual promises to the Plaintiffs;
>
> (2) that the Defendant's waiver of its lien rights against the Third Parties caused them to enter into new contracts or continue to perform the existing contracts with the Plaintiffs' and
>
> (3) the measure of value those contracts had to the bankruptcy estate.

This adversary proceeding is still in the pleading stage. The Defendant has alleged facts sufficient in its pleading to justify giving it the opportunity to conduct discovery and attempt to prove those facts at trial. If proven, the facts state a defense.

Accordingly, the Motion will be denied.

**Date: March 18, 2014**

          **ERIC L. FRANK**
          **CHIEF U.S. BANKRUPTCY JUDGE**

---

[5] The bankruptcy court ultimately rejected §547(c)(1) defense in Great Point Intermodal and the district court affirmed that determination. The defendant failed to meet its burden of proving the specific value provided by reopening the shipyards. 2004 WL 2988507, at *2. Nevertheless, the district court was unequivocal in its determination that the reopening of the shipyards was new value for purposes of §547(c)(1).